Appeal by defendants John and Shirley Brewton from a summary judgment in favor of the plaintiff, Alabama Farm Bureau Mutual Casualty Insurance Company (Farm Bureau), in Farm Bureau's action for a declaratory judgment and on the defendants' counterclaim for the policy's proceeds and for damages based upon fraudulent misrepresentation. We affirm in part, reverse in part, and remand. *Page 1121 
Mrs. Angeline Browning owned a home, its contents, and one acre of land on which these were located, near Huxford in Escambia County. Mrs. Browning and Mrs. Brewton went to Farm Bureau's agent in Brewton, Escambia County, to obtain a fire insurance policy. The policy was issued on July 9, 1982, in the name of the Brewtons.
Mrs. Browning died intestate in December 1982, and was survived by five sisters who were her heirs.
The dwelling and its contents were destroyed by fire on January 27, 1983. The Brewtons made a claim under the policy and filed a proof of loss form which disclosed that at the time of loss those having an interest in the property were the "Heirs of Angeline Browning."
Farm Bureau filed this declaratory judgment action alleging five counts. Count one alleged that the Brewtons had made a false claim of an ownership interest in the property on their application for insurance. Count two alleged that subsequent to the application Mrs. Brewton had falsely represented that she and her husband had been granted the property by Mrs. Browning. Count three alleged that after the fire Mr. Brewton falsely represented that he and his wife owned the home and its contents. Count four alleged that the Brewtons had no insurable interest. Count five alleged that the Brewtons had breached material provisions of the policy as a result of their misrepresentations.
In their counterclaim against Farm Bureau, the Brewtons alleged that the correct ownership of the property was made known to the agent, who, with this knowledge, stated that he would issue the policy, and that in reliance on this representation they purchased the policy. Thus, the Brewtons assert that Farm Bureau waived the requirement of title or is estopped to assert their lack of title. Farm Bureau denied these allegations.
Farm Bureau moved for summary judgment "on the grounds that there is no genuine issue as to any material fact with regard to the fact that the defendants had no insurable interest in either the dwelling or the contents in question." This motion was based upon the pleadings on file and the depositions of the Brewtons. The Brewtons' response to Farm Bureau's motion included depositions of Robert M. Woodall, the Farm Bureau agent. The trial court determined that Farm Bureau was entitled to judgment as a matter of law and that no genuine issue of fact existed with regard to defendant's counterclaim; accordingly, the trial court granted Farm Bureau's motion for summary judgment. It is from this judgment that the Brewtons appeal.
Mrs. Brewton deposed that at the time she applied for the policy of insurance, Mrs. Browning owned the home and its contents. Mrs. Brewton testified that she informed the agent Mr. Woodall that she wanted insurance on the house and that Mrs. Browning told him that she owned the house and was "going to will the house over" to the Brewtons. According to Mrs. Brewton, she told Mr. Woodall that Mrs. Browning would be "living in the home long as she lived," but that they, the Brewtons, would be responsible for the insurance premiums "and [for the policy] to be put in our name." She did not remember conversing with Mr. Woodall again, but left a check for the premium with Mrs. Browning, which was picked up later at the house by Mr. Woodall.
Mr. Robert M. Woodall, the Farm Bureau agent, testified by deposition that he filled out the application form according to Mrs. Brewton's information, and that Mrs. Brewton gave him a check for the premium. Mr. Woodall also testified that Mrs. Brewton represented to him that she and her husband were the sole owners of the property and that Mrs. Browning was a tenant. He related a telephone conversation he had with Mrs. Brewton following her visit to his office. According to Mr. Woodall, Mrs. Brewton verified that she and her husband were owners.
Both Mr. and Mrs. Brewton testified that Mrs. Browning left no will and that prior to her death she had not deeded the property to them. Mr. Brewton testified that neither *Page 1122 
he nor his wife had lived in the house after Mrs. Browning's death. The Brewtons apparently had not lived there prior thereto.
Plaintiffs argue that they had an insurable interest in the premises insured because, as Mrs. Brewton explained, Mrs. Browning, the owner, had raised Mr. Brewton and had told them that she would will the property to them, and thus Mr. Brewton had a "reasonable expectation" that he would receive title to the property. These facts, the plaintiffs maintain, together with the alleged fact that the insurer issued the policy knowing that the Brewtons did not hold the legal title at the time of issue, establish an "insurable interest" in the Brewtons.
Code of 1975, § 27-14-4, provides:
 "(a) No contract of insurance of property or of any interest in property, or arising from property, shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
 "(b) `Insurable Interest,' as used in this section, means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.
 "(c) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury or impairment thereof."
These provisions are "[m]erely declaratory of those legal principles which have long governed the concept of insurable interest in this State." National Security Fire Casualty Co.v. Hester, 292 Ala. 592, 596, 298 So.2d 236, 239 (1974).
The Brewtons rely upon Hester, supra, as authority for the claim that they had an insurable interest because of a "reasonable expectation" of receiving title to the Browning property. It must be pointed out that in Hester the insureds were vendees of real property who had taken actual possession of a house and land under a contract of sale, had made a partial payment of the sale price, and had made substantial improvements to the insured premises. Thus, and in spite of the argument of the insurer that the contract between the vendor and vendee placed the risk of loss upon the vendor, this Court held that the vendee had an insurable interest. Commenting upon the theories of waiver and estoppel as applied to the insurer, this Court stated:
 "[T]hese theories only require that the insureds act in good faith and have some sort of pecuniary interest in the insured property at the time of the loss. . . ." (Emphasis added.) 292 Ala. at 601, 298 So.2d at 244.
See also American Equitable Assurance Co. v. Powderly Coal Lumber Co., 225 Ala. 208, 142 So. 37 (1932), holding that an estoppel must be supported by an insurable interest, thus invalidating the dictum contra expressed in American Ins. Co.v. Newberry, 215 Ala. 587, 112 So. 195 (1927). Indeed, as the Court of Civil Appeals observed in National Security Fire Casualty Ins. Co. v. Brannon, 47 Ala. App. 319, 253 So.2d 777,cert. denied, 287 Ala. 737, 253 So.2d 782 (1971):
 "It seems to be settled law everywhere that a policy of insurance is void ab initio, unless the insured has an insurable interest in the property, and the reason for the rule most commonly assigned is that if the insured has no insurable interest in the property insured, the insured is wagering that a loss or damage to the property will occur and the insurer is wagering that it will not, thereby supplying the insured with an incentive to injure or destroy the insured property, which is against public policy."
That opinion analyzed the "insurable interest" found in other cases, e.g., North British Mercantile Ins. Co. v. Sciandra,256 Ala. 409, 54 So.2d 764 (1951) (finding insurable interest in husband who operated store in building owned by husband and wife as tenants in common); and Howard F. Insurance Co. v.Chase, 72 U.S. [5 Wall.] 509, 18 L.Ed. 524 (1866) (one of five trustees of church indebted to church had insurable interest because he had secured *Page 1123 
policy to secure his indebtedness owed for another).
And in Fidelity Phenix Fire Ins. Co. of N.Y. v. Raper,242 Ala. 440, 6 So.2d 513 (1941), this Court found that one who was at most a tenant at sufferance, having no right which he could enforce in the insured property, had no insurable interest, adding:
 "The law is clear that a person with no interest in the land other than that of a tenant by sufferance, or a squatter, or a trespasser, has no insurable interest in the property. This matter was expressly decided in the case of Royal Exchange Assur. of London, England v. Almon, 206 Ala. 45, 89 So. 76, 78. In that case the husband was living with his wife on a farm and insured the buildings belonging to his wife. The court held that he had no interest in the property other than the mere right to live there with his wife, and that this was not sufficient to establish an insurable interest. The court said:
 "`Did the plaintiff have an insurable interest in the barn? If not, then the policy would be void as to the barn; it being repugnant to public policy to allow one person to insure the property of another for his benefit.
"`. . . .
 "`The barn belonged to the wife; possession alone was in the husband, the plaintiff. Just bare possession of the barn with no facts averred except being the husband, to show right of possession and use of the barn, is not sufficient interest in the barn by plaintiff to be insured. It is not an insurable interest.'"
See also Pacific National Fire Ins. Co. v. Watts, 266 Ala. 606,97 So.2d 797 (1957) (original mortgagor who remained liable on the mortgage even though the property had been sold had an insurable interest in the property because the insurance became the primary fund for payment of the mortgage).
Applying these principles to the case at bar, it is clear that the Brewtons here had no insurable interest in Mrs. Browning's property. They had no title to the property and no actual or constructive possessory interest in it. Neither was related to Mrs. Browning. They knew she had sisters living. They knew that Mrs. Browning owned the house and its contents; thus they did not suffer any economic loss from their destruction. The fact that the Brewtons expected Mrs. Browning to make a testamentary disposition of the property to them because she had raised Mr. Brewton, and thus in gratitude they sought to bear the expense of insuring the property, does not constitute an insurable interest under our authorities. Mere love and affection for the true owner, though laudable, do not constitute the required insurable interest. Brannon, supra; §27-14-4 (b).
Having found that the Brewtons had no insurable interest in the premises, we conclude that the doctrines of waiver or estoppel do not apply. Accordingly, the trial court was correct in granting summary judgment in favor of Farm Bureau on the Brewtons' claim for the policy's proceeds and on Farm Bureau's claim that the policy was void.
We reach a different result, however, on the Brewtons' claim based upon fraud.
The elements of a claim for fraud are found in Code of 1975, § 6-5-101, and recited in Earnest v. Pritchett-Moore, Inc.,401 So.2d 752 (Ala. 1981):
 "`Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.'
 "Under this principle there must be (1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who must be damaged as a proximate result. International Resorts, Inc. v. Lambert, Ala., 350 So.2d 391 (1977) and cases cited." *Page 1124 
Those elements are alleged in the Brewtons' counterclaim and substantiated in the material before the trial court. The counterclaim recites:
 "1. On or about the 9th day of July, 1983, Counter-Defendant, through its duly authorized agent, and Counter-Claimants were negotiating concerning the purchase by Counter-Claimants from Counter-Defendant of a policy of fire insurance to insure a dwelling and contents located near Huxford, in Escambia County, Alabama.
 "2. At that time, Counter-Claimants revealed to the Counter-Defendant the status of the ownership of the property to be insured and Counter-Defendant was further advised as to the purpose for which said insurance was being purchased. At that time the Counter-Defendant represented to the Counter-Claimants that Counter-Defendant would write said policy of insurance and in fact issued fire insurance policy number F188876, a copy of which is annexed to the complaint in this cause as Exhibit `A'. The attached fire insurance policy specifically provided that the Counter-Defendant would pay all losses resulting from fire and certain other perils insured against with respect to the dwelling and contents located therein.
 "3. The representations made by the Counter-Defendant were false and/or Counter-Defendant knew they were false and/or Counter-Defendant, without knowledge of the true facts, recklessly misrepresented them and/or the representations were made by mistake but with the intention that Counter-Claimants should rely upon them.
 "4. Counter-Claimants believed the representations and in reliance upon them purchased the policy of insurance."
These allegations were supported by the deposition of Mrs. Brewton. Mr. Woodall, as the agent of Farm Bureau, directly disputed Mrs. Brewton's version of the conversation in his office and her denial of a later telephone conversation.
Payment of the premium by Mrs. Brewton, which was shown here, has been held to be proof of the necessary damage. Old SouthernLife Ins. Co. v. Woodall, 348 So.2d 1377 (Ala. 1977).
As stated in Ryan v. Charles Townsend Ford, Inc.,409 So.2d 784 (Ala. 1981):
 "It is a long-established rule in this state that on motions for summary judgment, the movant has the burden of negating the existence of any issue of material fact; Plant v. Reid, Inc., 365 So.2d 305
(Ala. 1978); Worley v. Worley, 388 So.2d 502
(Ala. 1980), and if there is a scintilla of evidence supporting the nonmoving party, summary judgment is inappropriate. Studdard v. South Central Bell Tel. Co., 356 So.2d 139 (Ala. 1978). In determining the existence of genuine issues of material fact, the record must be viewed by this Court in a light most favorable to the non-moving party. Papastefan v. B L Const. Co., Inc. of Mobile, 356 So.2d 158
(Ala. 1978)."
See Rule 56, A.R.Civ.P.
The summary judgment against the Brewtons on their fraud claim, therefore, was error, and the cause must be remanded for further proceedings.
The judgment is affirmed in part, reversed in part, and remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES and ADAMS, JJ., concur. *Page 1125