554 So.2d 953 (1989)
ALFA MUTUAL INSURANCE COMPANY, successor to Alabama Farm Bureau Mutual Casualty Insurance Company, Inc.
v.
John K. BREWTON and Shirley C. Brewton.
88-336.
Supreme Court of Alabama.
September 1, 1989.
As Modified on Denial of Rehearing November 3, 1989.
On Return from Remand December 22, 1989.
*954 Reggie Copeland, Jr. of Barker, Janecky & Copeland, Mobile, for appellant.
James E. Hart, Jr., Brewton, for appellees.
SHORES, Justice.
This matter is before this Court for the third time. Two prior decisions, Brewton v. Alabama Farm Bureau Mut. Cas. Co., 474 So.2d 1120 (Ala.1985) (Brewton I), and Alabama Farm Bureau Mut. Cas. Ins. Co. v. Brewton, 517 So.2d 599 (Ala.1987) (Brewton II), provide the background of this case. In Brewton I, Farm Bureau (predecessor to ALFA Mutual Insurance Company and hereinafter referred to as "ALFA") was granted a summary judgment on the Brewtons' fraud claim, and the contract claim was dismissed. This Court upheld the dismissal of the contract claim, but reversed a summary judgment in favor of ALFA on the fraud claim. The appeal in Brewton II arose out of the trial on the fraud and negligence claims, wherein the jury returned a verdict in favor of the Brewtons for $40,000 ($30,000 "damages" and $10,000 "punitive damages"). This Court reversed and remanded the case on the grounds that actual damage is an essential element of a fraud cause of action, noting that "although the Brewtons did prove the loss of their premium payment, they did not prove and could not prove, any loss to themselves under the policy of insurance." Brewton II, at 602.
This appeal arises out of the second trial, which resulted in a jury verdict in favor of the Brewtons and against ALFA in the amount of $100,000. ALFA timely filed a motion for JNOV and, in the alternative, for a new trial and for a remittitur. The motion was denied by operation of law when more than 90 days elapsed without a ruling by the court. Rule 59.1, A.R.Civ.P. ALFA appeals.
We first address the question of whether the trial court erred in submitting the Brewtons' fraud and negligence claims to the jury. ALFA contends that the Brewtons failed to prove actual damage or detrimental reliance and, therefore, that their fraud and negligence claims should not have survived ALFA's motion for a directed verdict.
The facts of the case revolve around a fire insurance policy issued by ALFA to the Brewtons on July 9, 1982, on a house and its contents that were owned by Mrs. Angeline Browning, Mr. Brewton's aunt, and that was located on one acre of land in Escambia County, Alabama. The house burned on January 27, 1983. The Brewtons made a claim under the policy and filed a proof of loss statement, and ALFA denied the claim. In April 1983, a check in the amount of $117.92 was sent to the Brewtons by ALFA as a pro-rated refund of their annual premium. The check was never negotiated.
The Brewtons contend that on July 9, 1982, Mrs. Brewton and Mrs. Browning went to the ALFA office in Atmore for the purpose of procuring insurance in the name of the Brewtons on the property owned by Mrs. Browning. This insurance was to replace coverage that Mrs. Browning already had. She wanted the Brewtons to pay the premiums and she planned to deed them the house. They met with Mr. Robert Woodall, who was Mrs. Brewton's regular ALFA agent, and told him that they wanted insurance on Mrs. Browning's house. Mrs. Brewton testified that she told Mr. *955 Woodall that Mrs. Browning was going to deed the house to her and her husband, but that she had not yet done so. She further testified that she asked Mr. Woodall if he could write insurance in the Brewtons' names since Mrs. Browning was going to deed the house to them and they were going to make the payments on it. Mrs. Brewton testified that Mr. Woodall said that it did not matter if the property remained in Mrs. Browning's name, that it could still be insured in the Brewtons' names. The coverage could have been placed in Mrs. Browning's name if Mr. Woodall had advised them to do so, since she owned the property. Mrs. Brewton said that she relied on Woodall's statements. Mr. Woodall went out to inspect the house on the afternoon of July 9, 1982. There, he picked up a check in the amount of $207.00 made out to Alabama Farm Bureau, for one year's premium on the property, which Mrs. Brewton had written and left with Mrs. Browning. Subsequently a policy was issued to Shirley and John Brewton that covered the fire loss on the house and its contents.
Mr. Brewton was also called as a witness. He testified that he had had discussions with his aunt about transferring the property. He also testified that Mrs. Browning wanted to change the insurance and wanted the Brewtons to pay the premium. He stated that he relied upon the policy, written by ALFA to insure the house in his name and Mrs. Brewton's name.
The Brewtons also called Larry Spivey, district claims manager for ALFA, as an adverse witness. He was questioned extensively regarding the claim filed by the Brewtons after fire destroyed the property. He said he was reasonably sure that he had made the decision to deny the claim. Spivey testified that there was a difference in the answers to different questions contained in the application, including one answer on the back that indicated that the property "was deeded to applicant by relative." He acknowledged that he had never talked to Mr. Woodall concerning these discrepancies.
In her testimony, Mrs. Brewton denied ever receiving a telephone call from Mr. Woodall or anyone else in the ALFA office, after the application was filed. Marjorie Troutman, a secretary from the ALFA office in Atmore, testified for ALFA that she filled in several items on the application after Mrs. Brewton signed it on July 9, 1982. She stated that the information added on the application was only to verify information already given by Mrs. Brewton to Mr. Woodall.
Mr. Woodall, the ALFA agent, was also called by the Brewtons as an adverse witness. He acknowledged that several changes were made on the application on the day after Mrs. Brewton signed it. He further testified that he was the Brewtons' agent and that they were regular policyholders with ALFA. Mr. Woodall testified that ALFA emphasized that a person has to own property before he can insure it, and that it was his responsibility to ask that question and that he did.
In Brewton I, we set out the elements necessary for a fraud claim, which are found in Code 1975, § 6-5-101, and recited in Earnest v. Pritchett-Moore, Inc., 401 So.2d 752 (Ala.1981):
"`"Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
"`Under this principle there must be (1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who must be damaged as a proximate result.'" (Citations omitted.)
Brewton I, 474 So.2d at 1123. See, Sessions Co. v. Turner, 493 So.2d 1387, 1389 (Ala.1986).
A fraud claim may be based also on concealment:
"`Suppression of a material fact which the party is under an obligation to communicate constitutes legal fraud. The obligation to communicate may arise from the confidential relations of *956 the parties or from the particular circumstances of the case.
"Code 1975, § 6-5-102.'"
We set out the standard by which a plaintiff's reliance on a misrepresentation of a defendant in a fraud case is to be judged in Hickox v. Stover, 551 So.2d 259, 263 (Ala.1988) where we said:
"In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
"`[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth."'

Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1091-92 (Ala.1989) (Hornsby, C.J., concurring specially.)"

Id. at 263.
Hammond v. City of Gadsden, 493 So.2d 1374, 1377 (Ala.1986).
The question then becomes whether the evidence given in this case was sufficient to submit the Brewtons' claims of fraud and negligence to the jury. ALFA contends that there was no proof of detrimental reliance by the Brewtons or proof that they actually suffered damage in this case. In support of its position, ALFA cites Brewton II, wherein we said:
"Indeed, actual damage is an essential element of a fraud cause of action, Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971), and although the Brewtons here did prove the loss of their premium payment, they did not prove, and could not prove, any loss to themselves under the policy of insurance."

Brewton II, 517 So.2d at 602.
As we said in Brewton I and Brewton II, the Brewtons have no contractual right of recovery under the policy of insurance. However, this does not defeat a fraud claim. The payment of a premium and reliance on a representation that insurance was supplied when it was not has been held to be proof of the damage necessary to sustain a claim of fraud. Old Southern Life Ins. Co. v. Woodall, 348 So.2d 1377 (Ala.1977), National States Ins. Co. v. Jones, 393 So.2d 1361 (Ala.1980), Brewton I, at 1124, Brewton II at 602.
We hold that there was sufficient evidence of fraud and justifiable reliance by the plaintiffs to sustain the jury verdict and to withstand ALFA's motions for directed verdict, JNOV, and new trial. First, there was a false representation by Mr. Woodall to Mrs. Brewton that coverage for the house could be written in her name and her husband's name. Second, the misrepresentation concerned a material existing fact. Third, Mrs. Brewton relied upon the false representation in paying the premium of $207.00 for the year's coverage. Fourth, as we said above, she was damaged by her payment of the premium when no coverage was, in fact, in existence.
While it is true that the testimony of Mrs. Brewton and that of Mr. Woodall are in conflict, the verdict makes it clear that the jury believed the statements of Mrs. Brewton, and it is the province of the jury to make such a determination.
ALFA contends that the award of punitive damages creates a constitutionally defective verdict. ALFA specifically argues that the award of punitive damages violates the excessive fines clause of the Eighth Amendment to the United States Constitution. The United States Supreme Court has ruled recently in the case of Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., ___ U.S. ___, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), that the excessive fines clause of the Eighth Amendment does not apply to punitive damages awards in cases between private parties. In that case an award of $6 million in damages was upheld when the compensatory damages were only $51,146. This Court has addressed the remaining constitutional arguments submitted by ALFA and has rejected them. See, Industrial *957 Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812 (Ala.1988); United American Ins. Co. v. Brumley, 542 So.2d 1231 (Ala.1989); HealthAmerica v. Menton, 551 So.2d 235 (Ala.1989); and Olympia Spa v. Johnson, 547 So.2d 80 (Ala.1989).
The final question presented by ALFA is whether the jury verdict of $100,000 was excessive and clearly the result of bias, passion, or prejudice. The trial court allowed the motion for a new trial and/or remittitur to be denied by operation of law. See Rule 59.1, A.R.Civ.P. It did not set out the factors it considered in denying ALFA's motions.
In Hammond v. City of Gadsden, supra, Harmon v. Motors Insurance Corp., 493 So.2d 1370 (Ala.1986), and Alabama Farm Bureau Mutual Cas. Ins. Co. v. Griffin, 493 So.2d 1379 (Ala.1986) this Court set guidelines for a trial court's resolution and for our subsequent review of an allegation raised in a motion for a new trial that the jury has returned an excessive or inadequate verdict. In Hammond, the Court was asked to review a trial court order that had reduced a jury verdict without any explanation of the criteria utilized in doing so. The Court concluded:
"Therefore, it is not only appropriate, but indeed our duty, to require the trial courts to reflect in the record the reasons for interfering with a jury verdict, or refusing to do so, on grounds of excessiveness of the damages.
"....
"We simply now require the trial courts to state for the record the factors considered in either granting or denying a motion for new trial based upon the alleged excessiveness or inadequacy of a jury verdict. We know of no other way by which this Court can discharge fairly its role of review."

Hammond, 493 So.2d at 1379.
Thus, the Court now requires that a trial judge state, for the record, his or her reason for granting or denying a new trial or remittitur on the ground of inadequacy or excessiveness of the verdict.
Accordingly, this cause is remanded for the entry of an order consistent with the opinion in Hammond. The trial court in its discretion may order a further hearing to reconsider the claim that the verdict is excessive. In any event, the trial court is to state its reasons for any actions it takes on this issue, for the record, and is to report its findings and conclusions to this Court within 28 days of the date of the release of this opinion.
REMANDED.
HORNSBY, C.J., and JONES and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.

ON APPLICATION FOR REHEARING
SHORES, Justice.
APPLICATION OVERRULED; OPINION MODIFIED.
HORNSBY, C.J., and JONES and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.

ON RETURN FROM REMAND
SHORES, Justice.
This matter is before this Court for the fourth time. Three prior decisions, Brewton v. Alabama Farm Bureau Mut. Cas. Co., 474 So.2d 1120 (Ala.1985) (Brewton I), and Alabama Farm Bureau Mut. Cas. Ins. Co. v. Brewton, 517 So.2d 599 (Ala. 1987) (Brewton II), and our original opinion in the present appeal, dated September 1, 1989, and modified on denial of rehearing on November 3, 1989 (Brewton III), provide the background of this case. In Brewton III, we found no error in the trial, but remanded the case to the trial court for a review of the verdict consistent with the opinion in Hammond v. City of Gadsden, 493 So.2d 1374, 1377 (Ala.1986), which sets guidelines for a trial court's review of an allegation in a motion for a new trial that the jury has returned an excessive or inadequate verdict.
*958 The trial judge reviewed the verdict in light of Hammond and entered the following order:
"This matter is before the Court pursuant to the order issued by the Supreme Court of Alabama directing this Court to enter an order consistent with the opinion in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). Originally, the defendant's motion for new trial and/or remittitur was denied by operation of law. The defendant's motion for new trial and/or remittitur was denied by operation of law due to the fact that it was not argued by counsel until the 89th day and this Court did not have adequate time to prepare an appropriate order as mandated by Hammond. Although the motion was denied by operation of law, it is the opinion of the Court that the motion for new trial and/or remittitur should be denied.
"After carefully reviewing all aspects of the trial, this Court is unable to hold that the verdict in this case is based upon bias, passion, corruption or other improper motive. The attorneys for both parties are very capable and experienced litigators. The Court does not know of anything said or done by either attorney which could be said to have biased or impassioned the jury in this case. The jury appeared to be an average jury and the Court does not recall any improper activity on the part of the jury during the trial of this case.
"In cases where punitive damages are awarded, it is incumbent upon the Court to consider other considerations essential to a critique of a punitive damages award. These considerations are as follows:
"1. The culpability or gravity of the defendant's conduct.
"2. The desirability of discouraging others from similar conduct.
"3. The impact upon the parties.
"4. The impact upon third parties.
"As regards the culpability or gravity of the defendant's conduct, the jury resolved the disputed issues of fact in favor of the plaintiffs. Although the evidence presented in this case was in sharp conflict, the jury apparently believed that the defendant's agent was told by the plaintiffs that they did not own the property, yet he told them that they could insure the property knowing this to be untrue. Although the plaintiff's only loss was the payment of the premium in the amount of $207.00, the fact remains that a house valued at approximately $30,000.00 was left uninsured. It is the opinion of the Court that this has a bearing on the culpability or gravity of the defendant's conduct. Furthermore, a substantial award of punitive damages would be desirable to discourage other insurance companies from similar conduct.
"No evidence was presented as to the impact of this verdict upon the defendant. This Court can only assume that this judgment will not force the defendant into bankruptcy or cause it to go out of business. The Court is unaware of any impact that this verdict would have upon third parties.
"For the foregoing reasons, it is ORDERED, ADJUDGED AND DECREED that the defendant's motion for new trial and/or remittitur is denied.
"Dated this 23rd day of October, 1989.
 "s/ BRADLEY E. BYRNE
 "CIRCUIT JUDGE"
Having carefully considered the order of the trial court on remand, we affirm its judgment.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.